## CHAMBERLAIN v HOSFORD

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 17190. Decided Jan. 12, 1942.

Cull & Fuller, Cleveland, James Easley. Cleveland, for plaintiff-appellant.

Miller & Hornbeck, Cleveland, for defendant-appellee.

## OPINION

By MORGAN, J.

The defendant in this case is a licensed bond dealer doing business in Cleveland, Ohio, and as such has extensively bought, sold and exchanged bonds for banks, brokers and individuals. He is not a stock broker and does not have a seat on the New York or other stock exchanges.

The plaintiff began to buy bonds from the defendant in April, 1925. A considerable volume of business in bonds was done by the parties in the next two years. No claim is made by the plaintiff against the defendant in this case based on any bond transaction.

Defendant was an extensive dealer on margin in the New York Stock Market which was known to the plaintiff, as the parties had social as well as business relations.

On June 3, 1927, it is conceded that plaintiff and defendant entered into an oral contract by which the defendant agreed to manage a speculative account for their mutual benefit on the New York Stock Exchange; plaintiff was to furnish the collateral to secure the account and to receive 90% of the profits and the defendant to manage the account and to receive 10% of the profits. The defendant immediately opened an account with the stock brokerage firm of Dyar, Hudson & Company in the name of C B. Chamberlain, the plaintiff, and deposited with Dyar, Hudson & Company $7,000.00 in Peru bonds furnished by the plaintiff, to secure the account. Later plaintiff advanced other bonds so that the maximum par value of the bonds furnished by the plaintiff to secure this account was $35,000.00.

All of these bonds, or their equivalent, have been returned to the plaintiff, and no claim is made by her for any loss with reference to them.

About January 1, 1928, the plaintiff made a trip to Europe, and remained abroad until about July 1, 1928 when she returned to her home in the Alcazar Hotel in Cleveland. Both before and after she left for Europe, the defendant, at the plaintiff's request, made withdrawals from the account and delivered to her a sum of money exceeding $11,000.00. In each case the defendant also withdrew ten percent of the total amount withdrawn, to keep the account between them balanced.

When the plaintiff returned to Cleveland on or about July 1, 1928, the account, including withdrawals, was in the red a little over $3,000.00. From this point until the account was closed on November 23, 1928, the evidence is in hopeless conflict.

The defendant testified that on July 1, 1928, the plaintiff called at his home in Cleveland Heights and her visit on that day was also testified to by Mrs. Hosford and Mr. Worbs, local manager of Dyar, Hudson & Company who also was visiting the Hosfords at that time. The plaintiff denied that she visited the Hosfords on that day. The defendant also testified that he conversed with plaintiff at the Hosford home on July 4, 1928, the occasion being a July 4th garden party.

At one of these meetings with the plaintiff, the defendant testified that the plaintiff stated that her friends had been making money on the stock market and that she had to have higher earnings and more profits; defendant told her in reply that she was a widow and really could not afford to speculate with her principal; that she had already overdrawn her account and that she was leaning on his credit; that he thought he should end the account and that he would absorb whatever loss existed at that time.

As a result of these conversations, the defendant testified that the arrangement between them was altered and a new contract was made by which he was to guarantee the plaintiff against loss in the account so that she would be certain to have her principal returned to her but that the profits from then on should be on a fifty-fifty basis, to all of which the plaintiff agreed.

The plaintiff denied this conservation or that any such arrangement was made.

This case turns, if plaintiff's claim were not barred by the statute of limitations, on the question whether or not the ninety-ten arrangement between the parties was changed to a fifty-fifty arrangement, in return for defendant's guarantee of the account, on or between July 1st and July 5, 1928.

The controversy on this point is well stated in plaintiff's brief as follows:

"Did the parties, on or about July 5, 1928, change or modify their agreement so that defendant became entitled to fifty percent of all profits then in a speculative account or which might thereafter be made?"

The defendant produced from his files a copy of a letter dated July 6, 1928, which he testified was mailed to the plaintiff on that date. The letter is as follows:

"July 6, 1928

Mrs. Charlotte B. Chamberlain
c/o The Alcazar Hotel
Surrey & Derbyshire Roads
Cleveland, Ohio.

Dear Mrs. Chamberlain:

In accordance with conversation, it is understood that the basis of division of profit in your trading account will be changed to 50% each, each receiving one-half the profit on any moneys in the account or future profits made until same is closed; you being guaranteed against loss of your bonds.

Hoping this will turn out profitably for you, I am,

Most sincerely yours
HWH*EH        /S/ Harry W. Hosford."

One of defendant's employees testified that he saw this copy of the July 6th letter in defendant's files after it was written.

The plaintiff denied ever receiving the letter from the defendant.

The issue of fact in this case between the parties can be narrowed still further. On September 25, 1928, the defendant mailed the following letter to the plaintiff, which she admits having received:

"9-25-28

Mrs. Charlotte B. Chamberlain
c/o The Alcazar Hotel
Surrey & Derbyshire Roads
Cleveland, Ohio.

Dear Charlotte:

As requested on the telephone, enclosed you will find duplicate deposit slip of The Union Trust Company for $2500.00 which was taken from the joint account.

I have also taken $2500.00 from this joint account, in order to keep it properly balanced.

Most sincerely yours
HWH*EH."

The plaintiff admits that the defendant on that date deposited $2500.00 in her account with The Union Trust Company.

The defendant in the letter stated that the $2500.00 given the plaintiff was taken from the "joint account" and that he also had taken the same amount "from this joint account to keep it properly balanced."

Therefore, there can be no doubt but that some time after July 1, 1928, there was in existence a joint account between the parties in which the profits were to be divided on a fifty-fifty basis. If this was the same account as the one which had been in existence since June 3, 1927, then clearly the plaintiff would have no claim of any kind against the defendant.

The plaintiff admits that such a joint account existed between the parties. Her explanation of the joint account, however, is as follows:

She testified that on or about September 13, 1928, she had a telephone conversation with defendant in which she asked if she could have $2500.00 in money from the defendant to make some needed repairs to her house and to buy a new automobile.

She also testified that in this telephone conversation the defendant told the plaintiff that he had made recent purchases of Montgomery-Ward stock in her account and that this purchase already showed large profits; that the defendant invited the plaintiff to go into a new speculative venture in which he would take $15,000.00 from her profits from Montgomery-Ward stock and defendant would add $15,000.00 of his own money and they would engage in a joint speculative venture in a stock, the name of which he did not divulge to the plaintiff, and the profits derived from the venture were to be divided equally between them. The

plaintiff testified that she understood that the $2500.00 placed in her account on Sept. 25, 1928, came from this new account.

The defendant denied that he had any such telephone conversation with the plaintiff and testified that no such an account was ever opened. There is no evidence as to what the stock was which the defendant proposed to purchase. Only one account for the purchase of stock appears on the defendant's books with the plaintiff, which was continuous from June 3, 1927, and it was from this account referred to in the defendant's letters to the plaintiff of Sept. 25, 1928, as a joint account, that the defendant withdrew the $2500.00 and placed it in the Union Trust Company to plaintiff's credit.

The evidence shows that in the early part of September, 1928, the defendant bought 500 shares of Montgomery-Ward stock in the C. B. Chamberlain account and that no profits of this stock were withdrawn from the account at any time until it was closed out on November 23, 1928, and the 500 shares of Montgomery-Ward stock then in the account were sold at a profit of over $100,000.00. The issue, therefore, between the parties, can be narrowed still further. Was the joint account that admittedly existed between the parties on September 25, 1928, the account testified to by the defendant, or was there a new account created by the telephone conversation of September 13, 1928, as testified to by the plaintiff, which was to be on a fifty-fifty basis?

Plaintiff's evidence as to the alleged telephone conversation with the defendant on or about September 13, 1928, is unsupported by any other evidence. The plaintiff relies for corroboration upon the inherent probability of her story and discrepancies in the evidence given

by the defendant and other supporting witnesses.

About 2500 pages of typewritten testimony were taken on this issue between the parties and if we were to decide on the issue of fact between the parties and to analyze all of the evidence bearing on the issues, this opinion might grow to insufferable length. It is our opinion that this is unnecessary inasmuch as in our judgment the defendant has clearly established his defense of the statute of limitations.

We do not wish, however, that any inference should be drawn that because our judgment is founded upon the statute of limitations it is our opinion that on the merits the defendant would fail. Such is not the fact.

The only speculative account that had ever been carried on defendant's books in which the plaintiff was interested, was closed out, as stated, by the defendant on November 23, 1928. The plaintiff testified that shortly before the account was closed out she had called at the defendant's office and in his absence was told by one of the clerks that she had a large profit in her account. Counsel for plaintiff argued that this interview was the reason for the closing of the account. We do not think that this fact, even if true, is of any particular importance in the case. The defendant testified that the Montgomery-Ward stock had had an extremely rapid rise and that he was unwilling to take the chance of having to explain to plaintiff a subsequent decline in that stock if it should occur. That the account had in it a large profit and he deemed it best for plaintiff's interest to close it out and that as a matter of fact he came near to getting the top price for Montgomery-Ward stock.

After the account was closed out, it is conceded by plaintiff that all of the bonds which she had furnished as collateral for the account were returned to her. On the basis of a fifty-fifty division she received a total profit exceeding $68,000.00 on the account.

When the account was closed out the defendant notified the plaintiff in the following letter:

"CBC: ,

It has been deemed advisable to dissolve the joint account. Enclosed you will find sheet showing the amount due you and the disposition of the funds. Some of these bonds have not arrived from New York, but we will have these, together with the 25 M Warsaw and 10M Poland's within 3 or 4 days.

HWH."

Defendant purchased bonds for the plaintiff in the amount of $54,036.16. This left a balance of $424.63 due plaintiff in a division of the profits on a 50-50 basis, for which a check was enclosed with the letter. On the face of the check are the following words:

"In full and final settlement of account."

The notice and check was received by the plaintiff on the following day, November 24, 1928, and she has received all of the bonds purchased for her with her profits from the account.

The plaintiff testified that she saw the defendant at his office on December 3, 1928, at which time most of her bonds were delivered to her. She checked over the bonds as set forth in the release dated December 3, 1928. The defendant testified that he made a full explanation of the account to plaintiff on that date and his statements are supported by the evidence of two of his employees.

On December 3, 1928, the plaintiff signed the following receipt:

"This receipt rescinds all other receipts and leaves only the following bonds on deposit with Harry W. Hosford that are paid for and undelivered:

$10,000 Rudolph Karstadt 6s due 11/1/43

$10,000 Kingdom of Bulgaria 7½s due 11/15/68

and it is understood that Harry W. Hosford will advise Charlotte B. Chamberlain as soon as these bonds arrive from New York. This leaves no other bonds or securities whatsoever in the office of Harry W. Hosford for the account of Charlotte B. Chamberlain.

/S/ Charlotte B. Chamberlain."

Defendant's check for $424.63 on the face of which appeared the words "in full and final settlement of account," was held by plaintiff and deposited by her at the Union Trust Company on December 4, 1928, the day following the date she met the defendant in his office and signed the receipt for her bonds.

On December 14, 1928, the defendant wrote the plaintiff asking her to call at his office for the remainder of the bonds. She did call on December 31, 1928, received the bonds and executed the following release:

"December 31, 1928

Received of: Harry W. Hosford $10,000 Rudolph Karstadt Inc. first mortgage collateral 6% sinking fund bonds (with warrants) due November 1st, 1943.

Temporary Nos. TM 6425/6434— May 1st, 1929, coupons attached.

$10,000 Kingdom of Bulgaria 7½%. Stabilization loan 1928. 4½

year secured sinking fund gold bonds due Nov. 15, 1968.

Interim Nos. 3116/25—May 15th, 1929 coupons attached.

This delivery of bonds to Charlotte B. Chamberlain constitutes all of the bonds or securities of any kind in the possession of Harry W. Hosford which are the property of Charlotte B. Chamberlain, and leaves no bonds or securities of any kind, for any purpose whatsoever in the possession of Harry W. Hosford for Charlotte B. Chamberlain.

/S/ Charlotte B. Chamberlain."

On February 7, 1929, the plaintiff wrote the defendant a letter as follows:

"Cleveland, Ohio
Feb. 7, 1929

Harry W. Hosford
308 Euclid Avenue,
Cleveland, Ohio.

Dear Harry:

Would it be possible at this time for me to have a complete settlement of the proceeds from my stocks before I leave Cleveland since the other friends have received theirs, who were in on the same ones.

I have also hoped to see you about my bonds as so many of them are interims.

Surely no one in all this great big Market is going to be more appreciative of such a huge sum of money (or profits) or understand the value of it more than I.

I find some of my noveau riche friends are paying $750.00 and $500.00 respectively for what cost me $100.00 is that not heart rendering?

I don't think it is presuming too much to say that it will help even up all the bad luck I have had, including the early affliction I have suffered under which has taken on new complications.

Have made very good progress here but do not yet know the results of the various tests I am being subjected to.

I believe "Brevity is the soul of Wit" and you will please pardon my writing at length which helps pass the time, down here.

Sincerely,
Charlotte B. Chamberlain."

When the plaintiff asked in the above letter "to have a complete settlement of the proceeds from my stocks before I leave Cleveland" it is not clear whether or not she was expressing dissatisfaction with the settlement. It might have meant that she wished a final statement of the bonds purchased from the profits realized on the account. She also clearly indicated a wish that the defendant would continue to make her money in "this great big market." To this letter the defendant replied to the plaintiff on February 9, 1929, of which the first paragraph is as follows:

"Have your letter of Feb. 7th and in regard to what you say about a complete settlement, will say you know positively you have had a complete settlement at this office and that this office does not owe you one cent either in cash or securities."

If plaintiff's letter of February 7, 1929, can be construed as a request or a demand for a final settlement with the defendant, there is no doubt but that on February 9th the defendant made it very clear to the plaintiff that she had received every cent in cash or securities owing her by him.

It became necessary for the plaintiff to file her income tax return for 1928 inasmuch as she had made and had received a very large

280

profit from the account managed by the defendant. She employed the law firm of Andrews & Belden for this purpose and on February 28, 1929, this firm wrote the defendant stating:

"She informs us that you made a number of investments for her throughout the year and has shown us a letter from you dated November 23, 1928, closing her account."

On March 5, 1929, defendant wrote Andrews & Belden, attaching a statement of the C. B. Chamberlain account in stock transactions for 1928. On March 8th, 1929, Andrews & Belden sent another letter to defendant requesting further information which was supplied to them by defendant in his letter of March 11. 1929.

On March 12. 1929, Andrews & Belden wrote the plaintiff giving her the information obtained from the defendant and she also conferred with Mr. Veach of the firm of Andrews & Belden about the matter.

On February 25, 1929, the last bonds due the plaintiff were ready for delivery. At that time she signed the following receipt:

"February 25, 1929
Received of: Harry W. Hosford $25,000 City of Warsaw 7% 30-year Sinking Fund External Gold Bonds due February 1st, 1958.

Permanent Bond Nos. 8226/50—8/1/29 and subsequent coupons attached.

Rec'd—10 M Rep of Poland 7247
    10 M Ruhr Cas 7s for exchange
    Harry W. Hosford
with the exception of
    by C. Heidenrich.
This leaves no stocks (bonds) coupons, cash or assets of any kind whatsoever due Charlotte B. Chamberlain from this office.
    Charlotte B. Chamberlain
        (signed)."

All of the said bonds were delivered to The Union Trust Company for the plaintiff on March 4, 1929.

This action was filed seven years and three months after the closing of the account on November 23, 1928. There is no evidence that the defendant at that time or thereafter concealed from the plaintiff the fact that he retained fifty percent of the profits for himself. If this fact was not known to the plaintiff on November 25, 1928, she obtained for herself and through her attorneys, Andrews & Belden, detailed information as to the handling and disposition of the account not later than March, 1929. On February 25, 1929, the defendant made it clear to the plaintiff that he paid her everything due her on the account, and that he did not owe her another cent. In our opinion there can be no doubt whatsoever that the statute of limitations against any claim that plaintiff might have had for an additional part of the profits from the account began to run nearly seven years before the filing of this action.

Both parties agree that the contract of June 3, 1297, was wholly oral. The plaintiff claims that this was changed to a written agreement by virtue of a writing signed by the defendant and delivered to the plaintiff on September 13, 1927, when she delivered to the defendant an additional $20,000.00 United Steel Works Corporation bonds as collateral for the account. This writing is as follows:

"September 13, 1927
Received of Mrs. C. B. Chamberlain $20,000 United Steel Works

Corp'n 20 year 6½% Sinking Fund Debentures Series A Due July 1, 1947 to be used to speculate with for her account and risk in the New York Stock Market.

> Harry W. Hosford."
> By J. B. Spring."

In our opinion, the above cannot be considered to be a contract in writing. It is nothing more nor less than a receipt for the additional $20,000.00 bonds delivered to the defendant. It is wholly silent as to the terms of the contract between the parties and the basis agreed upon orally for the division of the profits.

The plaintiff further claims that the oral agreement between the parties created a trust and that therefore the case falls within the exception contained in §11236 GC which provides that "the provisions of this chapter respecting lapse of time as a bar to a suit shall not apply in a case of a continuing and subsisting trust."

It is our view that a "continuing and subsisting trust" was not created by the parties in this case. It is true that there was a contractual relation of confidence existing between the plaintiff and defendant when she delivered to defendant her bonds and agreed that he should manage the buying and selling of the stocks to be secured by the bonds. She was placing confidence in defendant's honesty and ability to buy and sell wisely. This relation of confidence, however, is not peculiar to trusts. It exists in other relations. It is just as often to be found when the relation of principal and agent is created. Frequently a principal reposes as large an amount of trust and confidence in an agent as is ever reposed in a trustee by the beneficiary.

In this case the legal title to the bonds was not vested in the defendant. They were delivered to him for a special purpose, namely, to secure the account. At the hearing, plaintiff denied that she was aware that defendant intended to establish an account with a broker dealing on the New York Stock Exchange. However, it is in evidence that in August, 1927, within two months after the account was established there was forwarded to her a Dyar-Hudson & Company check so that she then became aware of the manner in which the account was being handled. It is difficult to believe that she was so ignorant of the manner in which dealings were conducted on the New York Stock Exchange that she did not know that the defendant, to carry out the purpose of their agreement in the normal course of business, would proceed to start an account with a reputable brokerage house. In fact, shortly after her account was closed out by the defendant on Nov. 23, 1928, she established two accounts of her own with well known brokerage houses for purposes of stock speculation.

It is therefore our conclusion that the proof in this case falls short of establishing "a continuing and subsisting trust" between the parties and that this action is controlled by §11222 GC which specifies a six year limitation for actions on a contract not in writing.

Even if we were to find that a trust relationship had been established by and between plaintiff and defendant, the statute of limitations began to run against any claim the plaintiff may have had against defendant, when he disclaimed the trust and asserted that he did not owe the

plaintiff a penny. Having disclaimed the trust, the statute of limitations began to run against the plaintiff as if her claim had been from the beginning a purely legal claim.

Williams v 1st Presbyterian Church 1 Oh St 478

Paschall et al v Hinderer 28 Oh St 568-579

Yearly v Long 40 Oh St 27

Taylor v Brown 92 Oh St 287

Jones v Jones Admr. 18 C. C. 260

Larwill v Burke et al 19 C. C. 449

There is no element of account-in this case. The plaintiff does not deny that on the basis of a fifty-fifty division of the profits on the closing of the account she was paid all that was coming to her. Her claim is that by ▇▇▇▇ contract instead of fifty percent she was to receive ninety percent of the profits or forty percent additional to what she received. On that basis it is not in dispute that the amount due the plaintiff from the defendant is $45,454.06 with interest, no more and no less. This is really an action for breach of contract where the damages are fixed and certain.

The plaintiff has filed a supplemental petition claiming that the defendant took and invested her share of the profits not delivered to her and realized a subsequent profit by thus using plaintiff's money in speculation. Our view that the relation between plaintiff and defendant was not that of a "continuing and subsisting trust" also disposes of this claim. The plaintiff accordingly has no right to follow this money into other securities and investments and this claim is likewise barred by the statute of limitations.

It is therefore our opinion that any action which the plaintiff has or may have had at the time of the filing of her petition is barred by the statute of limitations.

Decree for defendant.

LIEGHLEY, PJ., SKEEL, J., concur.